## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| RICK BUTLER; CHERYL BUTLER; and GLV, INC., an Illinois Corporation, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 21 C 6854 |
| NANCY HOGSHEAD-MAKAR; CHAMPION WOMEN, a Florida Not-For-Profit Corporation; and DEBORAH DIMATTEO, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

This matter is before the Court on Defendants Nancy Hogshead-Makar, Champion Women, and Debra DiMatteo's (collectively, "Defendants") Motion to Dismiss Plaintiffs Rick Butler, Cheryl Butler, and GLV, Inc.'s ("GLV") (collectively, "Plaintiffs") First Amended Complaint ("FAC"). For the following reasons, the motion is granted-in-part and denied-in-part.

## BACKGROUND

In a sprawling, 52-page, 212-paragraph FAC seeking $250,000,000, Plaintiffs bring claims against Defendants for tortious interference, conspiracy, and violations of Illinois commercial disparagement and consumer fraud statutes. The Court takes the following account from Plaintiffs' FAC, accepting the facts asserted as true for present

purposes and drawing reasonable inferences in Plaintiffs' favor. *See Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 317 (7th Cir. 2021).

Rick Butler is a volleyball coach in the Chicago suburbs. He and his wife Cheryl co-own GLV which does business under the name Sports Performance Volleyball Club ("Sports Performance") and Great Lakes Center. In the 1990s, Butler was accused of having "inappropriate sexual relationships" with three players he coached in the 1980s. Plaintiffs allege that the players, according to their own statements, were above the legal age of consent[1] at the time. In 1995, USA Volleyball ("USAV") found there was probable cause to believe that Butler had sexual intercourse and subsequent physical and emotional relationships with the three former players that began when Butler was their coach. Plaintiffs claim that USAV determined that, even though the relationships were allegedly legal under the laws at the time, it would ban Butler for five years as punishment for causing the organization "public embarrassment" and "ridicule."

The allegations became common knowledge within the volleyball community. Even in the face of such allegations, however, over the years Sports Performance amassed over 98 National Championship gold medals and had nearly 600 players named as Amateur Athletic Union ("AAU") All-Americans. Sports Performance is recognized as one of the nation's top facilities for hosting volleyball tournaments, camps, clinics, and other sporting events; GLV is also lauded as a premier event host.

---

[1] The age of consent in Illinois is seventeen or, in some limited circumstances (which do not apply here), eighteen. *See* 720 ILCS 5/11-1.50; 720 ILCS 5/11-1.20.

Until 2017, GLV hosted many of the largest, most high-quality tournaments in the Midwest.

Hogshead-Makar founded Champion Women in 2014, as a legal advocacy organization for girls and women in sports. Champion Women is described as "an organization specializing in sports law, governance, and public relations." Dkt. # 15, ¶ 88. DiMatteo was a member of USAV's Great Lakes Region Board of Directors and assisted in organizing tournaments. She is also a brand representative for Asics. For purposes of diversity jurisdiction, Plaintiffs are citizens of Illinois, Hogshead-Makar and Champion Women are citizens of Florida, and DiMatteo is a citizen of Nevada.

As alleged in the FAC, in June 2017, Champion Women first attempted to remove the Butlers from the sport with a Change.org petition to USAV, the AAU, and the U.S. Center for SafeSport. The petition called for the organizations to ban Butler from coaching, relying on a false and misleading presentation of the 1995 proceedings and subsequent events.

Beginning in 2017, Defendants coordinated a letter writing campaign that circulated false and misleading information about Plaintiffs. Letters were written to USAV, the AAU, volleyball clubs, school athletic departments and officials, parents of Butler's players, and Plaintiffs' volleyball partners and sponsors across the country, pleading they dissociate from Butler, including his teams, facilities, and personnel. The offending letters, published between June 2017 and December 2018, enclosed "original source materials that confirm [Butler's] pedophilia." Dkt. # 15, ¶¶ 50–51.

3

In the emails, attached letters, and articles, Champion Women knowingly and maliciously disseminated false and defamatory statements, including that: USAV found that Butler sexually abused four minor girls, Butler was banned for life from USAV for the sexual abuse of minor girls he coached, and Butler is "a bona fide sexual predator." When the letters were sent, Hogshead-Makar and Champion Women knew these statements were false.

In 2018, USAV again banned Butler pursuant to the "public embarrassment and ridicule" provision, and USAV referenced "interpersonal sexual relationships" with a "non USAV minor" who, according to her own testimony, was above the legal age of consent at the time.

In 2018, as a result of Defendants' concerted efforts through letter writing and social media postings, many volleyball clubs withdrew from GLV tournaments in which their teams previously participated. Plaintiffs accuse Defendants of interfering with existing contracts and prospective business relationships with, among others, Mizuno, several universities, and Legacy Sports.

Based on these alleged facts, Plaintiffs' FAC brings claims against Defendants for tortious interference with contract, tortious interference with prospective economic advantage, conspiracy, violations of the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA"), 815 ILCS 510/1 *et seq*., and violations of the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.*

Defendants move to dismiss Plaintiffs' FAC in its entirety, arguing Plaintiffs' claims are really just a single defamation claim which is time-barred and Defendants' actions are shielded by the Fair Reporting Privilege. Defendants further argue this lawsuit is what is referred to as "Strategic Lawsuit Against Public Participation" ("SLAPP"), and Defendants are shielded by Florida and Nevada anti-SLAPP statutes.

## **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The Court accepts as true well pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A plaintiff need not provide detailed factual allegations, but it must provide enough factual support to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S.

5

662, 678 (2009). A claim is facially plausible if the complaint contains sufficient alleged facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## DISCUSSION

Defendants move to dismiss the FAC for failure to state a claim on multiple bases. Defendants argue that each cause of action alleged is based solely on the protected speech of Defendants on matters of public interest. Defendants further argue Plaintiffs' FAC is simply an attempt to evade free speech defenses and the strict, one-year statute of limitations by masquerading their defamation action by another name. Defendants also seek dismissal pursuant to the Florida and Nevada Anti-SLAPP statutes. We first assess whether Plaintiffs have adequately pleaded causes of action for tortious interference, conspiracy, and violations of commercial disparagement and consumer fraud statutes without considering Defendants' assertion that Plaintiffs are merely trying to repackage a defamation claim as other torts. After determining whether Plaintiffs have sufficiently stated claims, we then address Defendants' defamation argument and defenses and how those defenses might affect the viability of Plaintiffs' claims.

### I.    Plaintiffs' Claims

#### A.    Tortious Interference Claims

Plaintiffs bring claims against all Defendants for tortious interference with contracts and tortious interference with prospective business advantage.

6

The elements of a tortious interference with contract claim are: (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages. *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 154–55 (1989).

To state a claim for tortious interference with a prospective business advantage under Illinois law, Plaintiffs must allege: "(1) the plaintiff's reasonable expectation of a future business relationship; (2) the defendant's knowledge of that expectation; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectations from ripening; and (4) damages." *Ali v. Shaw*, 481 F.3d 942, 944 (7th Cir. 2007) (citing *Fellhauer v. City of Geneva*, 142 Ill. 2d 495 (1991)).

Defendants do not argue that Plaintiffs have not sufficiently pleaded the elements of both tortious interference claims. Rather, Defendants rely on their various defamation defenses in an attempt to defeat these claims. As discussed in detail below, further factual development is necessary in order for the Court to determine the viability of those defenses. As alleged in the FAC, Plaintiffs have adequately pleaded tortious interference claims.

### B.    Illinois Uniform Deceptive Trade Practices Act

Under the IUDTPA, a person engages in deceptive trade practices when, in the course of his or her business, he or she "disparages the goods, services, or business of

7

another by false or misleading representation of fact" or "engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding." 815 ILCS 510/2(a)(8) & (12). In other words, the plaintiff must allege that the defendant published untrue or misleading statements that disparaged the plaintiff's quality of its goods or services. *Kole v. Vill. of Norridge*, 941 F. Supp. 2d 933, 963 (N.D. Ill. 2013).

The IUDTPA does not provide a cause of action for damages, "but it does permit private suits for injunctive relief and has generally been held to apply to situations where one competitor is harmed or may be harmed by the unfair trade practices of another." *Greenberg v. United Airlines*, 206 Ill. App. 3d 40, 46 (1st Dist. 1990) (citation omitted). Essentially, the statute codifies the common-law tort of commercial disparagement. *Republic Tobacco, L.P. v. N. Atl. Trading Co.*, 254 F. Supp. 2d 985, 997–98 (N.D. Ill. 2002). To sustain a claim under the IUDTPA, a consumer must allege "the requisite elements that would entitle it to injunctive relief, including 'facts which would indicate that [it] is likely to be damaged in the future.'" *Int'l Star Registry of Ill. v. ABC Radio Network, Inc.*, 451 F. Supp. 2d 982, 990–91 (N.D. Ill. 2006) (brackets in original).

Plaintiffs allege Defendants Hogshead-Makar and Champion Women have broadly asserted that players are unsafe in GLV's programs and at GLV events, and have spread the false narrative that Plaintiffs are unfit to coach junior athletes and that players in GLV programs are in danger. Plaintiffs argue that Defendants' allegedly

false and misleading statements have destroyed GLV's professional reputation and continue to impede GLV's ability to conduct business.

Plaintiffs further contend the FAC alleges "other conduct which similarly creates a likelihood of confusion or misunderstanding" because Plaintiffs allege that the threats made to organizations doing business with GLV are intended to confuse the volleyball community about the legality and consequences of doing business with Plaintiffs. Plaintiffs say club directors have interpreted Defendants' actions as a warning to those who participate in GLV events.

Defendants argue the speech at issue goes to the Butlers' *integrity* and does not constitute statements disparaging the *quality* of Plaintiffs' goods. Indeed, "Illinois courts have construed the [IUDTPA] to apply only to statements disparaging the quality of a business's products; statements that impute a want of integrity are not actionable under the [IUDTPA]." *Republic Tobacco*, 254 F. Supp. 2d at 998; *see also Allcare, Inc. v. Bork*, 176 Ill. App. 3d 993, 1000 (1st Dist. 1988) ("[D]efamation and commercial disparagement are two distinct causes of action. Defamation lies when a person's integrity in his business or profession is attacked while commercial disparagement lies when the quality of his goods or services is attacked."); *Organ Recovery Sys., Inc. v. Preservation Sols., Inc.*, 2012 WL 116041, at *6 (N.D. Ill. 2012) ("The statements . . . must specifically disparage a product or service and not just attack the reputation of the business or the person selling it."). Defendants say the focus of the letter writing campaign was to spread awareness of the accusations and findings regarding Butler's

9

history of "improper sexual relationships with minor players; these Defendants urged schools, clubs and sponsors to dissociate with Plaintiffs *on that basis alone*." Dkt. # 21, at 26–27 (emphasis in original). The Court agrees with Defendants that the majority of the statements impugn Plaintiffs' integrity rather than the quality of their services and therefore cannot serve as a basis for a claim under the IUDTPA. However, statements that players in GLV's volleyball programs and at GLV events are unsafe necessarily implicate the quality of Plaintiffs' services. Defendants' motion to dismiss is therefore granted-in-part and denied-in part as to Plaintiffs' IUDTPA claim.

## C.    Illinois Consumer Fraud and Deceptive Trade Practices Act

To state a cause of action under the ICFA, a plaintiff must allege: "(1) a deceptive act or practice by the defendant; (2) the defendant intended that the plaintiff rely on the deception; (3) the deceptive act occurred in a course of conduct involving trade or commerce; and (4) actual damage to the plaintiff; (5) proximately caused by the deceptive act." *Phila. Indem. Ins. Co. v. Chi. Title Ins. Co.*, 771 F.3d 391, 402 (7th Cir. 2014) (citing *De Bouse v. Bayer AG*, 235 Ill. 2d 544, 550 (2009)). A practice is unfair under the ICFA if it offends public policy; is immoral, unethical, oppressive or unscrupulous; or causes substantial injury. *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 669 (7th Cir. 2008).

As an initial matter, Plaintiffs are not consumers under the ICFA. *See* 815 ILCS 505/1(e) (a consumer is "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use

10

or that of a member in his household.").  Plaintiffs have not alleged they purchased or contracted for the purchase of anything from Defendants.  Therefore, as non-consumers, Plaintiffs must satisfy the "consumer nexus test," which requires Plaintiffs to allege "conduct [that] involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns." *Roppo v. Travelers Cos.*, 100 F. Supp. 3d 636, 651 (N.D. Ill. 2015) (quoting *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 190 Ill. App. 3d 524, 533 (2d Dist. 1989)).  In order to satisfy the consumer nexus test, a plaintiff must show: "(1) that their actions were akin to a consumer's actions to establish a link between them and consumers; (2) how defendant's representations . . . concerned consumers other than [the plaintiff]; (3) how defendant's particular [activity] involved consumer protection concerns; and (4) how the requested relief would serve the interests of consumers." *Id.* (quoting *Brody v. Finch Univ. of Health Scis./The Chicago Med. Sch.*, 298 Ill. App. 3d 146, 160 (2d Dist. 1998).  Assuming without deciding that Plaintiffs have adequately pleaded an unfair practice, Plaintiffs have not, at a minimum, explained how they satisfy the first requirement of the consumer nexus test.  Count IV is dismissed, without prejudice.

### D.    Conspiracy

Defendants' only argument against the conspiracy claim is that conspiracy is not a standalone action and requires an underlying tort, and because all of Plaintiffs' other claims should be dismissed, so too should the conspiracy claim.  But, as the Court has

11

found Plaintiffs have stated claims for tortious interference above, the conspiracy claim stands.

### E.    Defendant DiMatteo

Plaintiffs' claims against DiMatteo are limited to the tortious interference claims and the conspiracy claim. Defendants move to dismiss DiMatteo as a defendant, arguing DiMatteo's speech at issue is protected under the First Amendment where it constitutes non-actionable opinion. Defendants say nothing in DiMatteo's offending publications can be reasonably interpreted as stating verifiable facts. This argument requires a more fulsome record and thus the Court will not dismiss DiMatteo at this time.

## II.    Defamation Defenses

Defendants' motion focuses almost exclusively on the allegations related to Defendants' allegedly defamatory statements. Plaintiffs, however, argue there is wider misconduct alleged. Even accepting as true Defendants' contention that Plaintiffs' lawsuit is one for defamation, masquerading as other torts, the defenses raised by Defendants do not conclusively establish a right to dismissal without further development of the factual record. We address each defense in turn.

### A.    Exhibits to the Motion to Dismiss

As a preliminary matter, Defendants sought leave to file a motion to dismiss of no more than 25-pages. The Court granted that motion. Defendants then filed a 34-page motion, attaching numerous exhibits including news articles, public statements,

public hearing transcripts, and pleadings from other lawsuits. Defendants claim each exhibit is either subject to judicial notice or referenced in and central to the FAC.

Plaintiffs strongly object to consideration of Defendants' exhibits, arguing that Appendix A and Appendix B contain supplementary factual arguments in an attempt to evade the page limitations set by the Court, that some of the incorporation-by-reference exhibits are not central to Plaintiffs' claims, and that the documents do not contain facts to be judicially noticed. Plaintiffs also argue "the evidence used to support Defendants' Motion to Dismiss is inadmissible based on inadequate authentications and hearsay." Dkt. # 30, at 21 (citing Federal Rules of Evidence 801(b), 901(b)). Any argument as to authentication is waived, for Plaintiffs bear the burden of identifying which exhibits they believe are inauthentic.

First, Appendix A and Appendix B. Plaintiffs argue these appendices contain supplemental factual arguments and urge the Court to decline to consider them. The Court sees no reason to strike Appendix A. Appendix A contains Defendants' exhibit list and full citations for each exhibit. Defendants also outline their claimed basis for the Court's consideration of each exhibit—judicial notice or incorporation by reference. The Court independently considers each exhibit to make that determination and therefore there is no need to strike Appendix A.

Appendix B is a comparison chart. The chart lists the allegedly defamatory statements identified in the FAC, and then directs the Court to the specific exhibits which Defendants believe support an application of the fair report privilege. Again,

because the Court must independently determine whether the defamatory statements are covered by the fair report privilege, we decline to strike Appendix B.

As for the exhibits, the Court can take judicial notice of Exhibits A and B as they are specifically referenced in the FAC. *See* Dkt. # 15, ¶ 90, n.6 & n. 7 ("The Defendants shared the horrific headlines in major national news outlets such as *Who Is Rick Butler? Youth Volleyball Coach Accused of Raping Teenage Girls Hundreds of Times* and *Volleyball Coach Allegedly Raped 6 Underage Girls – and His Wife Is Accused of Bullying Them*."). The court filings (Exhibits D–F) from *Mullen v. GLV*, Case No. 18-cv-1465 (N.D. Ill.), are also subject to judicial notice.

As to Group Exhibit C, the YMCA letter and its attachments, Plaintiffs argue that the documents are not referenced in the FAC and cannot possibly represent all of the communications referenced in the FAC. This is because, Plaintiffs argue, Plaintiffs alleged that the letters sent to customers and business associates were not identical, as they contained specific threats depending on the laws, rules, and business of the recipients. The Court agrees.

The Court does not take judicial notice of the contents of the news and magazine articles contained in Group Exhibit C and Defendants' other exhibits for their truth because the truthfulness of the reports is not something "capable of accurate and ready determination," but the Court can take judicial notice of the fact that the articles were

published and that they say what they say, without converting Defendants' motion to dismiss into a motion for summary judgment.[2]

**B.    Statute of Limitations**

First, Defendants argue Plaintiffs' defamation claim is barred by the statute of limitations.  Defamation claims are subject to a one-year statute of limitations, 735 ILCS 5/13-201, and the operative claims center on Defendants' speech and reiteration of source materials originating between 2017 and 2018.  Thus, Defendants assert, the allegedly false and defamatory speech at the heart of each cause was only actionable in the one year following its initial publication.  *See* 735 ILCS 5/13-201.  Plaintiffs fail to substantively respond to Defendants' statute of limitations argument, other than to say they have pleaded actions for tortious interference and deceptive trade practices. Plaintiffs argue the fact that the conduct underlying their tortious interference claim might have also supported a cause of action for defamation does not necessarily mean that the claim was "based upon or [arose] out of defamation."   Dkt. # 30, at 29 (alteration in original).  At this stage, we have to agree with Plaintiffs.  Discovery may very well reveal that Plaintiffs' claims are barred, but the statute of limitations is an affirmative defense that need not be addressed in the complaint.  *Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004).  "Complaints need not anticipate defenses; the resolution of the statute of limitations comes after the complaint stage."  *Id.*  We decline to dismiss Plaintiffs' FAC on this basis.

---

[2] Even if the Court declined to consider the exhibits, the outcome would be the same.

### C.    First Amendment

Defendants also argue that, to prevail on any of the causes asserted, Plaintiffs must plead—and ultimately prove—that Defendants violated the applicable standard of care in sharing the offending statements, official public records, and news media. The First Amendment shields defendants from liability for defamatory statements against public figures unless those statements are made with actual malice. *Madison v. Frazier*, 539 F.3d 646, 657 (7th Cir. 2008). Thus, we first consider whether Plaintiffs are "public figures."

Defendants argue Butler undisputedly qualifies as a limited purpose public figure. Whether someone is a limited purpose public figure turns upon the nature and extent of the individual's participation in the controversy that led to the defamation. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351–52 (1974). "[W]here individuals 'thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved,' they become public figures for the limited range of issues associated with those controversies." *Jacobson v. CBS Broad., Inc.*, 2014 IL App (1st) 132480, ¶ 28 (quoting *Gertz*, 418 U.S. at 345, 351).

In determining whether an individual may qualify as a limited public figure, Illinois has adopted a three-part test. *Jacobson*, 2014 IL App (1st) 132480, ¶ 31. "First, there must be a public controversy, which means an issue that is being debated publicly, the outcome of which impacts the general public or some portion of it in an appreciable way. A matter of general public interest or concern is not sufficient. Second, the

16

plaintiff must have undertaken some voluntary act seeking to influence the resolution of the issues involved. And finally, the alleged defamation must be germane to the plaintiff's participation in the controversy." *Id.* (internal citations omitted). Defendants say Butler "has thrust himself into the public controversy through his own public comments, interviews, press statements, and lawsuits filed in connection with the scandals." Dkt. # 21, at 21.

Though Defendants argue the allegations of the FAC establish Butler's status as a limited public figure, *see* Dkt. # 21, at 21 (and FAC paragraphs cited therein), and Plaintiffs do not put forth any convincing argument to the contrary, the Court is not persuaded that the controversy surrounding Butler and Defendants' attempts to remove Butler from the sport of volleyball can be deemed a controversy, "the outcome of which would impact the general public or some portion of it in an appreciable way." *Jacobson*, 2014 IL App (1st) 132480, ¶ 31. Whether Butler qualifies as a limited purpose public figure is a question of fact.

Plaintiffs also take issue with Defendants' assertion that the three Plaintiffs are "inextricably intertwined" for purposes of the public figure analysis, accusing Defendants of failing to develop a sufficient factual or legal argument which could justify dismissal of Plaintiffs' claims. Defendants argue that the actions and scrutiny paid to Butler are imputed to his organization and his wife, who "has independently thrust herself into the spotlight by standing behind her husband and publicly defending his actions." Dkt. # 21, at 22.

17

With respect to Cheryl, even if the Court considers Defendants' exhibits, there are simply too many factual issues that prevent the Court from determining whether Cheryl is a limited purpose public figure at this stage in the litigation. Thus, like Butler, she need not show actual malice; negligence is sufficient. The FAC clears this low bar.

However, if accepting as true Defendants' claim that Butler is a limited purpose public figure, Butler would ultimately have to show that Defendants published the alleged defamatory statements "with actual malice—in other words, that [Defendants] either knew the statements to be false or were recklessly indifferent to whether they are true or false." *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1965)). States of mind may be pleaded generally, but a plaintiff still must point to details sufficient to render a claim plausible. *Id*.

Plaintiffs argue that, even if actual malice is required, Plaintiffs have met their burden by alleging that Defendants' misconduct "was done in furtherance of their own private interests, and was willful, malicious, wanton, and oppressive, and done with conscious and callous indifference to the consequences and with specific intent to harm." Dkt. # 15, ¶ 160. Essentially, Plaintiffs allege that Defendants engaged in a smear campaign aimed at destroying Plaintiffs' business and reputations. The buzzwords Plaintiffs insert into their allegations are, in and of themselves, insufficient to raise an inference of actual malice. However, taking the FAC's allegations as true, Plaintiffs have plausibly alleged actual malice. Plaintiffs allege Defendants sent

18

threatening letters and posted on social media using inflammatory language, specifically intending to damage Plaintiffs' reputations and harm their business. The FAC contains sufficient detail to permit the inference of actual malice.

### D.    Fair Report Privilege

Defendants also argue that the fair report privilege serves as an independent basis for dismissal. More specifically, Defendants contend several of the alleged false and defamatory statements identified in the FAC come from source materials covered by the fair report privilege.

"Under Illinois law, a defamatory statement is not actionable if it falls within the fair report privilege, which applies to statements that are 'complete and accurate or a fair abridgment of [an] official proceeding." *Huon v. Denton*, 841 F.3d 733, 739–40 (2016) (quoting *Solaia Tech., LLC v. Specialty Publ. Co.*, 221 Ill. 2d 558, 588 (2006). The fair report privilege requires two conditions to be met: (1) the report must be of an official proceeding and (2) the report must be complete and accurate or a fair abridgment of the official proceeding. *Solaia Tech.*, 221 Ill. 2d at 588. "In order for the privilege to apply, the report need not be accurate in every single detail, but it cannot omit or misplace any information in a way that creates an erroneous impression to readers, report on events unfairly and inaccurately, or add the comments or insinuations of the reporter." *Glorioso v. Sun-Times Media Holdings, LLC*, 2023 IL App (1st) 211526, ¶ 80; *see also Kurczaba v. Pollock*, 318 Ill. App. 3d 686, 707–08 (1st Dist.

2000) ("The privilege can be lost if the report is inaccurate or unfair, where the 'account is discolored or garbled,' or where comments or insinuations are added.").

The determination of whether a news report is a fair abridgment "is made by comparing the gist or sting of the alleged defamation in the official report or proceedings with the gist or sting in the news account; if it is the same, then the news item is a fair abridgement of the proceedings and is covered by the reporting privilege." *Harrison v. Chicago Sun-Times, Inc.*, 341 Ill. App. 3d 555, 572 (1st Dist. 2003). The fair report privilege typically raises a question of law, not a question of fact, and is not concerned with the defendant's alleged subjective intent. *Huon*, 841 F.3d at 740. Even so, the Court finds that, based on the record at this stage in the litigation, Defendants are not as shielded by the fair report privilege as they claim.

For example, Defendants argue that the allegedly defamatory statement that on "January 10, 2018, USA Volleyball found that Rick Butler sexually abused four minor girls, and physically and verbally abused a fifth," (Dkt. # 15, ¶ 61(a)), is covered by the fair report privilege. In support of this claim, Defendants cite Exhibit C-12, which states "[The USAV] banned Butler for life, citing his "immorality, lack of judgment and unacceptable behavior." Dkt. # 21-8, at 33. Defendants also cite Exhibit C-4, which is a media statement from USAV, reporting that "[a] hearing panel of the USA Volleyball Ethics and Eligibility Committee today issued a decision finding that Rick Butler had engaged in multiple acts in violation of USA Volleyball's Bylaws, and banned him for life from membership in USA Volleyball." Dkt. # 21-5, at 14. The

statement explains that USAV received allegations of misconduct and abuse against Butler from a number of individuals, including several former players, which led USAV to bring a disciplinary hearing action, and a hearing was held on those allegations on January 8, 2018. Defendants' statement that USAV conclusively found that Butler sexually abused minor girls is not supported by the cited exhibits, regardless of whether or not those exhibits and their content are shielded by the fair report privilege.

As another example, the alleged defamatory statement that USAV allowed Butler to reapply five years later "after being threatened with litigation" is not supported by Defendants' cited materials.

Moreover, Defendants do not address each alleged defamatory statement in the Amended Complaint. Although Defendants claim they are not asking for a resolution of the factual issues, at this stage, further factual development is necessary before a determination can be made about the applicability of this defense.

### E.     Anti-SLAPP Statutes

Lastly, Defendants argue that the anti-SLAPP statutes of Florida and Nevada (Defendants' respective states of domicile) govern and warrant a dismissal of Plaintiffs' claims. Plaintiffs argue Defendants' anti-SLAPP arguments again misconstrue the nature of this lawsuit, and the alleged misconduct is not privileged under the anti-SLAPP statutes cited by Defendants. Plaintiffs do not dispute that Nevada's anti-SLAPP statute would apply to the claims against DiMatteo and Florida's anti-SLAPP statute would apply to the claims against Hogshead-Makar and Champion Women.

"The purpose behind an anti-SLAPP law is to encourage the exercise of free speech." *Chi v. Loyola Univ. Med. Ctr.*, 787 F. Supp. 2d 797, 803 (N.D. Ill. 2011). Accepting without deciding that the Florida and Nevada anti-SLAPP statutes govern, the Florida anti-SLAPP statute provides that a person may not file a cause of action against another person "without merit and primarily because such person . . . has exercised the constitutional right of free speech in connection with a public issue . . . ." Fla. Stat. Ann. § 768.295(3). "'Free speech in connection with public issues' means any written or oral statement that is protected under applicable law and is made before a governmental entity in connection with an issue under consideration or review by a governmental entity, or is made in or in connection with a play, movie, television program, radio broadcast, audiovisual work, book, magazine article, musical work, news report, or other similar work." Fla. Stat. Ann. § 768.295(2)(a). A defendant must make an initial showing that the anti-SLAPP statute applies, and then the burden shifts to the plaintiff "to demonstrate that the claims are not 'primarily' based on First Amendment rights in connection with public issue and not 'without merit[.]'" *Gundel v. AV Homes, Inc.*, 264 So. 3d 304, 314 (Fla. Dist. Ct. App. 2019).

Defendants argue Plaintiffs' causes of action lack merit because they are each based on Defendants' protected speech and reiterations of "*years* of accusations, lawsuits and press surrounding the topic of Butler's inappropriate sexual relationships with minor volleyball players." Dkt. # 21, at 34 (emphasis in original). A finding on the applicability of Florida's anti-SLAPP statute is inappropriate at this juncture

because, as explained above, Defendants' have not conclusively demonstrated that all of the speech at issue in the FAC is protected by the First Amendment.

Nevada's anti-SLAPP statute immunizes from liability "[a] person who engages in a *good faith* communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." NRS 41.650 (emphasis added). Under the first prong of the anti-SLAPP statute, courts evaluate "whether the moving party has established, by a preponderance of the evidence," that he or she made the protected communication in good faith. NRS 41.660(3)(a); *see also Coker v. Sassone*, 432 P.3d 746, 749 (Nev. 2019). No communication falls within the purview of the statute unless it is "truthful or is made without knowledge of its falsehood." *Coker*, 432 P.3d at 750. Only after the movant has shown that he or she made the protected statement in good faith do courts move to prong two and evaluate "whether the plaintiff has demonstrated with prima facie evidence a probability of prevailing on the claim." *See* NRS 41.660(3)(b).

DiMatteo has not met her burden of showing, by a preponderance of the evidence, that she made the alleged false and defamatory statements in good faith. For example, in one alleged statement, DiMatteo wrote that "No one should sponsor Rick Butler and Spvb . . . he got away with murder." Dkt. # 15, ¶ 80. This statement is clearly intended to harm Butler and not made in good faith. Nor has DiMatteo demonstrated the requisite degree of closeness between her challenged statements and an asserted public interest. The Court is also not convinced that the asserted matter of

public interest is one that is "something of concern to a substantial number of people," rather than a "relatively small specific audience," here, the volleyball community. *See Coker*, 432 P.3d at 750. Nevada's anti-SLAPP statute does not mandate dismissal of Plaintiffs' claims against DiMatteo.

## **CONCLUSION**

For the foregoing reasons, the Court grants-in-part and denies-in-part Defendants' Motion to Dismiss [20] at set forth above. Telephonic status hearing is set for August 22, 2023, at 10:20 a.m. The parties shall use the same call-in information [7]. It is so ordered.

Dated:        July 20, 2023

_____
Charles P. Kocoras
United States District Judge

24