UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICK BUTLER, CHERYL BUTLER, and GLV, INC., an Illinois Corporation, | ) ) ) ) ) No. 21 CV 6854 |
| Plaintiffs, | ) ) |
| v. | ) Magistrate Judge Young B. Kim ) |
| NANCY HOGSHEAD-MAKAR, CHAMPION WOMEN, a Florida Not-For-Profit Corporation, and DEBORAH DIMATTEO, | ) ) ) ) ) |
| Defendants. | ) June 12, 2024 ) |

**MEMORANDUM OPINION and ORDER**

Plaintiffs bring claims of tortious interference with contract, tortious interference with prospective business advantage, violation of the Illinois Uniform Deceptive Trade Practices Act ("Deceptive Practices Act"), and conspiracy against Defendants. Before the court is Plaintiffs' motion to compel Defendants to produce documents related to a complaint (the "SafeSport Complaint") filed with the United States Center for SafeSport against Plaintiff Rick Butler ("Rick"). For the following reasons, the motion is granted:

**Relevant Background**

Rick is a volleyball coach and co-owns a coaching and event business, GLV, Inc. (d/b/a Sports Performance Volleyball Club) ("GLV"), with his spouse Plaintiff Cheryl Butler. Plaintiffs allege that Defendants orchestrated various advocacy efforts, including a letter-writing campaign and social media posts, to spread false and

1

misleading statements about Rick and his business to "destroy" his coaching career. (R. 15, Pls.' First Amend. Compl. ¶ 1.) The alleged false and misleading statements relate to accusations against Rick that he engaged in inappropriate sexual, physical, or emotional relationships with minors between 1994 and 2018. (Id. ¶¶ 57, 61.) The allegations prompted USA Volleyball ("USAV")—the National Governing Body ("NGB") for the sport of volleyball and a member of the United States Olympic and Paralympic Committee ("USOPC")—to investigate and subsequently ban Rick from membership. (Id. ¶ 63; R. 62, Pls.' Mot. to Compel at 7); *see also USA Volleyball Suspended Membership List*, USA Volleyball, usavolleyball.org/safesport/suspended/ (last visited June 10, 2024). Plaintiffs further allege that Defendants used the allegations against Rick and USAV's findings to fabricate a narrative to "destroy the Butlers' professional reputations and permanently harm GLV's business relationships until they are put out of business." (R. 15, Pls.' First Amend. Compl. ¶ 47.)

The USOPC formed the United States Center for SafeSport (the "Center") in March 2017 to address the issue of athlete abuse. *See Callaghan v. U.S. Ctr. for Safe Sport*, No. 18 CV 336, 2018 WL 4107951, at *3 (M.D. Fla. Aug. 29, 2018). Shortly thereafter, in February 2018, Congress passed the Protecting Young Victims from Sexual Abuse and Safe Sport Authorization Act of 2017 (the "Act"). *Id.* The Act "establishes 'mechanisms that allow for the reporting, investigating, and resolution . . . of alleged sexual abuse in violation of the Center's policies and procedures.'" *Id.* (citing 36 U.S.C. § 220503(15), 220541(a)(3), (4)). Plaintiffs contend that Defendant

2

Nancy Hogshead-Makar "is widely recognized for co-writing and leading efforts to push the . . . Act through Congress." (R. 62, Pls.' Mot. to Compel at 2.)

The instant motion concerns the SafeSport Complaint, which Hogshead-Makar submitted to the Center in June 2017 on behalf of certain of Rick's alleged victims and then referenced when she emailed others about her "efforts to remove Rick Butler." (Id. Ex. 3 at 2, 7, 8.) For example, Hogshead-Makar wrote a letter to Schoolcraft College's athletic director in July 2017 thanking him for "decid[ing] against associating with [Rick]" and stating that "a complaint has recently been filed with [the Center], and that at least two additional victims have come forward." (Id. Ex. 3 at 8.) Hogshead-Maker also attached the SafeSport Complaint to an email she sent to two third parties, who Defendants contend were involved in passing the Act. (See id. at 5.)

Defendants initially objected to producing the SafeSport Complaint, asserting it was protected from disclosure by the attorney-client privilege, the common interest privilege, and the "right to confidentiality and anonymity under the SafeSport Code for the U.S. Olympic and Paralympic Movement." (Id. Ex. 2.) Plaintiffs then filed the current motion to compel, and this court held a hearing on the motion on May 8, 2024. At the hearing, Defendants submitted an amended privilege log and conceded that the SafeSport Complaint is not privileged because it has been disclosed to third parties, but maintained that it is exempt from disclosure based on: "Rights to Anonymity, Confidentiality and Non-Disclosure under the 2017 SafeSport Code and 36 U.S.C. 220541(a)(1)(e) & (f)(4)(C); Highly sensitive personal and identifying

3

information; No consent for disclosure from Reporter(s) or Witness(es)." (R. 66, Ex. A, Defs.' Amend. Privilege Log.)

## Analysis

Federal Rule of Civil Procedure 37 allows a party to move to compel the production of requested discovery materials. The court has "broad discretion" in reviewing such a motion, *Meyer v. S. Pac. Lines*, 199 F.R.D. 610, 611 (N.D. Ill. 2001), and should "independently determine the proper course of discovery based on the arguments of the parties," *Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996). Rule 26(b) governs the scope of discovery and provides that the "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). It is well-established that, "[b]ecause the purpose of discovery is to help 'define and clarify the issues,' relevance is to be construed broadly." *Doe v. Loyola Univ. Chi.*, No. 18 CV 7335, 2020 WL 406771, at *2 (N.D. Ill. Jan. 24, 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). When assessing proportionality, the court may consider the "importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefits." *Sols. Team v. Oak St. Health, MSO, LLC*, No. 17 CV 1879, 2021 WL

3022324, at *2 (N.D. Ill. July 16, 2021) (quotation omitted); *Motorola Sols., Inc. v. Hytera Commc'ns. Corp.*, 365 F. Supp. 3d 916, 924-25 (N.D. Ill. 2019).

Here, the court is satisfied that the SafeSport Complaint is relevant. There is no dispute that Hogshead-Makar filed this complaint with the Center in June 2017 and that it concerns abuse allegations against Rick. (See R. 62, Pls.' Mot. to Compel at 5.) Hogshead-Makar also emailed the SafeSport Complaint to third parties and referenced it in both emails and letters to individuals who are associated with the volleyball industry.

To succeed on their tortious interference with contract claim, Plaintiffs must show: (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages. *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.D.2d 672, 675-76 (Ill. 1989). For their tortious interference with prospective business advantage claim, Plaintiffs must demonstrate: "(1) the plaintiff's reasonable expectation of a future business relationship; (2) the defendant's knowledge of that expectation; (3) purposeful interference by the defendants that prevents the plaintiff's legitimate expectations from ripening; and (4) damages." *Ali v. Shaw*, 481 F.3d 942, 944 (7th Cir. 2007) (citing *Fellhauer v. City of Geneva*, 568 N.E.2d 870, 878 (Ill. 1991)). Interference is only actionable if plaintiff can show impropriety, such as fraud, deceit, intimidation, or deliberate disparagement. *Brinley Holdings Inc. v. RSH Aviation,*

*Inc.*, 580 F. Supp. 3d 520, 556-57 (N.D. Ill. 2022) (quotation omitted). And for their Deceptive Practices Act claim, Plaintiffs must show that Defendants, in the course of business, "disparage[d] the goods, services, or business of another by false or misleading representation of fact" or "engage[d] in any other conduct which similarly creates a likelihood of confusion or misunderstanding." 815 ILCS 510/2(a)(8), (12); *see Kole v. Vill. of Norridge*, 941 F. Supp. 2d 933, 963 (N.D. Ill. 2013) (plaintiff must prove defendant published false or misleading statements disparaging the quality of plaintiff's goods or services).

Under these standards, all claims asserted by Plaintiffs touch on whether Defendants engaged in communication rising to the level of impropriety, including use of false or misleading representation of fact. As such, the SafeSport Complaint is relevant to Plaintiffs' claims that Hogshead-Makar submitted that Complaint knowing it to be false and then used it to interfere with Plaintiffs and their business. *See Allstate Ins. Co. v. Ameriprise Fin. Servs., Inc.*, No. 17 CV 5826, 2018 WL 11355025, at *2-4 (N.D. Ill. Oct. 9, 2018) (reasoning that documents related to "nationwide scheme" in tortious interference claims are discoverable and relevant but may be subject to protective order).

The requested discovery is also proportional to the needs of this case under Rule 26(b)(1), insofar as the SafeSport Complaint touches on Defendants' alleged efforts to purposefully harm Plaintiffs and their business and Hogshead-Makar's use of that Complaint when communicating with others about Rick and his business, (see, e.g., R. 62, Pls.' Mot. To Compel, Ex. 3 at 2, 4, 6-9 (referencing SafeSport Complaint)),

6

and there is little to no expense or excessive resources required to secure that Complaint given that it is attached to Hogshead-Makar's email communication. (Id. at 5.)

That said, the inquiry of whether to compel production is complicated by the confidentiality interests of others not involved in this case. To be sure, the SafeSport Complaint includes the names of alleged victims who are not litigants, and protecting their confidentiality and privacy interests is important not only to SafeSport, *see* 36 U.S.C. §§ 220541-43, but also to the court, *see Doe v. Loyola Univ. Chi.*, 2020 WL 406771, at *5. Defendants assert that the SafeSport Complaint is protected from production by the Act and the 2017 "SafeSport Code for the U.S. Olympic and Paralympic Movement" (the "Code"), (R. 66, Ex. A, Defs.' Amend. Privilege Log), but the court disagrees. As an initial matter, the Act was signed into law on February 14, 2018. *See* 36 U.S.C. § 220503(15). Hogshead-Makar submitted the SafeSport Complaint at issue on June 23, 2017. (R. 62, Pls.' Mot. to Compel at 5 (referencing Defendant Hogshead-Makar's email attaching the Complaint).) Because the Act was passed after Hogshead-Makar submitted the Complaint, it is inapplicable here. *See In re USA Gymnastics*, No. 18-09108, 2020 WL 1932340, at *5 (Bankr. S.D. Ind. April 20, 2020) ("The Safe Sport Act contains no language to suggest it is meant to be applied retroactively."). Even if the Act were to apply here, however, it would not preclude production. Defendants point to Section 220541(a)(1)(E) of the Act, which states that the Center must "ensure that the mechanisms under subparagraph (D) provide fair notice and an opportunity to be heard and protect the privacy and safety

7

of the complainants." *See id.* § 220541(a)(1)(D) (the Center must "maintain an office for response and resolution that shall establish mechanisms that allow for reporting, investigation, and resolution, pursuant to subsection (c), of alleged sexual abuse in violation of the Center's policies and procedures."). But nothing within Section 220541(a)(1)(E) provides any exception related to disclosure. Defendants also rely upon Section 220541(f)(4)(C), which relates to the Center's investigations:

(C) Work product.—

(i) In general. — Any decision, report, memorandum, work product, notes, or case file of the Center —

(I) shall be confidential; and

(II) shall not be subject to discovery, subpoena, or any other means of legal compulsion in any civil action in which the Center is not a party to the action.

*Id.* Defendants argue that Section 220541(f)(4)(C) bars the disclosure of the SafeSport Complaint because the requested discovery qualifies as "work product" under the Act. Defendants' argument is not persuasive because Plaintiffs are not seeking discovery from the Center itself, but rather are seeking discovery from Defendants. Defendants have not presented any argument as to why they should be able to assert a confidentiality interest that belongs to the Center. *McKenzie v. USTA*, No. 22 CV 615, 2023 WL 2837528 (M.D. Fla. April 7, 2023), is instructive here. In *McKenzie* the court held that the defendants lacked standing to assert objections based on the same provisions of the Act, reasoning that "[t]he statute is clear: '[a]ny decision, report, memorandum, work product, notes, or case file *of the Center*' shall be confidential." *Id.* at *3 (emphasis in original). In this case, Plaintiffs did not serve

8

discovery on the Center, and documents within the possession, custody, or control of the Center are not before the court.

The Code is equally unavailing to Defendants. SafeSport began operating as an entity in March 2017, nearly a year before Congress passed the Act in February 2018. *See Callaghan*, 2018 WL 4107951, at *3. During the period between March 2017 and February 2018, the Code was in effect and set forth certain protections relating to a victim's or reporting individual's confidentiality interests. (See R. 66, Ex. B (attaching the Code).) Nothing within the Code prevents Defendants from producing the SafeSport Complaint. To be sure, the Code cannot establish a privilege "because Congress has not given administrative tribunals any power to create privileges that are binding on courts." *Nothstein v. USA Cycling*, 337 F.R.D. 375, 391 (E.D. Penn. 2020) (finding that the Code cannot serve as reason for objecting to discovery) (quotation omitted). Regardless, as explained above, Plaintiffs here direct their discovery requests to Defendants, not to the Center.

But while the SafeSport Complaint is not shielded from discovery based on the Act or the Code, the court nonetheless finds that confidentiality protections are warranted here. *See Doe*, 2020 WL 406771, at *5 (confidentiality protocol is appropriate to address privacy interests in contested documents pertaining to allegations of sexual assault); *see also Lymon v. Chamberlain*, No. 17 CV 50093, 2020 WL 6940985, at *5 (N.D. Ill. Nov. 24, 2020) (confidentiality order and redaction appropriate to address privacy interests of non-parties). The court entered an agreed confidentiality order in March 2024, which provides for documents to be produced

9

subject to a protective order if such documents include "any non-public information of an intimate nature regarding the parties and/ or abuse allegations" or under an "attorney's eyes only" designation if documents include any contact information concerning alleged victims. (R. 55, Confidentiality Order ¶¶ 2(a) & (b).) This court finds that the requested discovery can be produced under the current confidentiality order with the addition of redacting alleged victims' names and any contact information. Should the parties require a modification to the present confidentiality order, they may file a motion requesting such relief.

## Conclusion

For the foregoing reasons, the Plaintiffs' motion to compel is granted and the Defendants are directed to produce the SafeSport Complaint with the redactions described here.

                    **ENTER:**

                    **Young B. Kim**
                    **United States Magistrate**