UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICK BUTLER, CHERYL BUTLER, and GLV, INC., | ) <br> ) No. 21 CV 6854 <br> ) |
| Plaintiffs, | ) <br> ) |
| v. | ) Magistrate Judge Young B. Kim <br> ) |
| NANCY HOGSHEAD-MAKAR, CHAMPION WOMEN, and DEBORAH DIMATTEO, | ) <br> ) <br> ) <br> ) May 14, 2025 |
| Defendants. | ) |

**MEMORANDUM OPINION and ORDER**

Plaintiffs Rick Butler ("Rick"), Cheryl Butler ("Cheryl"), and GLV, Inc. ("GLV") bring this business interference suit alleging that Defendants Nancy Hogshead-Makar, Champion Women, and Deborah DiMatteo weaponized decades-old sexual assault allegations against Rick in a conspiracy to ruin Plaintiffs' volleyball business. Before the court is Defendants' motion to seal and for sanctions based on a breach of court orders, including the Agreed Confidentiality Order. For the following reasons, the motion is granted in part and denied in part:

**Background**

Rick founded and coached a volleyball club in the 1980s. (R. 15, First Am. Compl. ¶ 4.) The following decade, three former players alleged Rick had sexual relations with them. (Id. ¶ 6.) Meanwhile, Rick and his wife Cheryl continued to operate their volleyball business through their company GLV. (Id. ¶¶ 10-14.) In 2016 one of the accusers filed a complaint with the Amateur Athletic Union alleging

Rick engaged in sexual conduct with her in the 1980s. Defendant Hogshead-Makar, the founder of Champion Women, supported this complaint on social media. (Id. ¶¶ 17, 18.) Defendants then contacted third parties and asked them to stop working with Plaintiffs in light of the allegations in the complaint. (Id. ¶¶ 17-28.) Thereafter, Plaintiffs filed this action alleging civil conspiracy, tortious interference with contracts and prospective business advantage, and violations of Illinois disparagement and consumer fraud statutes. (Id.)

On March 1, 2024, the parties agreed upon a Confidentiality Order, which in part designates as for Attorney's Eyes Only ("AEO") information that qualifies as "contact information concerning an alleged victim of physical or sexual abuse." (R. 55, Confidentiality Order ¶¶ 2(a) & (b).) During discovery, Plaintiffs moved to compel Defendants to produce documents relating to a complaint filed with the United States Center for SafeSport ("the SafeSport Complaint"), which includes identifying information concerning the alleged victims Rick sexually assaulted. (R. 62, Pls.' Mot. to Compel.) The court granted the motion in June 2024 and ordered Defendants to produce the SafeSport Complaint under the Confidentiality Order, with alleged victims' names and contact information redacted. (R. 70.) In so ruling, the court determined that the redactions, coupled with the AEO designation in the Confidentiality Order, provided sufficient privacy protections to allow discovery of the SafeSport Complaint ("June 2024 Order"). (R. 71, Mem. Op. and Order.) Defendants then produced the SafeSport Complaint—under the AEO designation and with names and contact information redacted—to Plaintiffs'

2

attorney Danielle D'Ambrose. (See R. 74 ("This means that Plaintiffs' attorney may review the [SafeSport Complaint] but may not share the complaint with Plaintiffs or discuss the substance of the complaint with Plaintiffs.").)

The following year, in January 2025, Attorney D'Ambrose drafted a motion for leave to file a second amended complaint and emailed it to Defendants. (See R. 104, Defs.' Mot. at 4; R. 104-1, Watkins Decl. ¶ 7 & Ex. B at 2.) The draft motion states that Plaintiffs discovered the identities of the reporters involved in the SafeSport Complaint and implies who they are. (R. 104-1, Watkins Decl. ¶ 8 & Ex. B at 1; see also R. 97, Pls.' Mot. for Leave to File at 8.) Defendants responded that the draft motion includes information marked as AEO and, as such, they asked Attorney D'Ambrose to "remove the identifying information from the third bullet point on page 8" before filing. (R. 104-1, Watkins Decl. ¶ 8 & Ex. B at 1.) Attorney D'Ambrose did not respond to the removal request. Instead, she filed Plaintiffs' motion on the public docket without changes. (See id. Watkins Decl. ¶ 9; R. 97, Pls.' Mot. for Leave to File.) Defendants responded with the current motion, asking the court to seal Plaintiffs' motion and to sanction Plaintiffs and Attorney D'Ambrose. (R. 104, Defs.' Mot.)

## Analysis

Defendants' motion to seal is granted, and the request for sanctions is granted in part and denied in part. Attorney D'Ambrose violated both the Confidentiality Order and the June 2024 Order by disclosing information the parties agreed would be, and the court ordered must remain, protected under the

3

Confidentiality Order's AEO designation—namely, the identities of alleged victims. Plaintiffs' motion for leave to file, posted on the public docket, includes sufficient information for Rick and Cheryl—or members of the public following this case—to discern the identities of the alleged victims. Because Attorney D'Ambrose violated court orders protecting such information, the continued sealing of Plaintiffs' motion for leave to file a second amended complaint and sanctions against her are warranted.[1]

The court has broad discretion to impose sanctions for a party's failure to obey a discovery order. *See* Fed. R. Civ. P. 37(b)(2)(A) (authorizing courts to sanction a party who "fails to obey" a discovery order); *see also Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 775-76 (7th Cir. 2016) (recognizing that the court has inherent power to sanction misconduct during discovery). This authority includes the ability to sanction a party for violations of confidentiality orders the court enters. *See Greviskes v. Univs. Rsch. Ass'n, Inc.*, 417 F.3d 752, 759 (7th Cir. 2005) (stating in *dicta* that violation of a protective order is a Rule 37 violation); *Harmon v. City of Santa Clara*, 323 F.R.D. 617, 622, 626-27 (N.D. Cal. 2018) (entering sanctions where the plaintiff's attorneys violated a court order by allowing public dissemination of a video labeled as confidential under a protective order). Indeed, Rule 37(b)(2)(A) authorizes the issuance of "just orders" when a party disobeys a

---

[1] After Plaintiffs moved for leave to file a second amended complaint ("the motion"), (R. 97, Pls.' Mot. for Leave to File), Defendants moved to seal the motion on grounds it includes AEO information, (R. 104, Pls.' Mot.). The court directed the clerk's office to provisionally seal the motion. (See R. 105.) Because the court now grants Defendants' motion, the motion will remain sealed.

4

court order such as the Confidentiality Order entered in this case. *See Harmon*, 323 F.R.D. at 622, 626-27 (awarding reasonable fees and costs to litigate protective order violation where the plaintiff's attorneys made a "volitional decision" to "widely and publicly disseminate [a] video" marked as confidential). Culpability similarly plays a role in determining the appropriate level of sanctions imposed pursuant to the court's inherent authority. *See Greviskes*, 417 F.3d at 759 (explaining that when "deciding what measure of sanctions to impose" under the court's inherent power, the court "should consider 'the egregiousness of the conduct in question in relation to all aspects of the judicial process'").

In this case, Defendants notified Attorney D'Ambrose that she should refrain from disclosing information relating to the SafeSport Complaint—from which the alleged victims could be identified—because doing so would violate court orders. (See R. 104-1, Watkins Decl. ¶ 8 & Ex. B at 1 (admonishing Attorney D'Ambrose "to remove . . . identifying information from the third bullet point on page 8").) Nevertheless, Attorney D'Ambrose filed Plaintiffs' motion for leave to file without seeking clarification or making changes. (Id. Watkins Decl. ¶ 9; see also R. 97, Pls.' Mot. for Leave to File.) Further aggravating the situation, Defendants had warned Attorney D'Ambrose during a deposition that identifying information in the SafeSport Complaint was confidential. (R. 104, Defs.' Mot. at 3-4.)

Attorney D'Ambrose does not contest that she had notice of the confidential nature of the victims' names and contact information. (See generally R. 110, Pls.' Resp.; R. 110-4, D'Ambrose Decl.) Nor could she. After the court granted Plaintiffs'

5

motion to compel the production of the SafeSport Complaint with the AEO designation and redactions, (R. 70; R. 71, Mem. Op. and Order), two non-party alleged victims filed a sealed response asking that their identities not be disclosed to Plaintiffs out of fear for their families and careers, (R. 73, Sealed Resp.). The court then entered an order making clear that "Plaintiffs themselves are not gaining access to the subject complaint—only their attorney of record." (R. 74 (explaining that "Plaintiffs' attorney may review the [SafeSport Complaint] but may not share the complaint with Plaintiffs or discuss the substance of the complaint with Plaintiffs").)

Attorney D'Ambrose also does not deny that Plaintiffs' motion for leave to file a second amended complaint includes information from which Rick, Cheryl, and others could identify the alleged victims. (See generally id.) Instead, Attorney D'Ambrose contends only that she did not "willfully violate[]" any court orders, (R. 110-4, Attorney D'Ambrose Decl. ¶ 2), and "do[es] not know which specific individuals Defendants are referring to in their motion as being 'identified,'" (id. ¶ 3). She then criticizes Defendants for not identifying the "specific individual[s] . . . supposedly identified" in Plaintiffs' motion. (Id. ¶ 3.) But the fact remains that Defendants alerted her to language in Plaintiffs' motion that could out the alleged victims, (see R. 104-1, Watkins Decl. ¶ 8 & Ex. B at 1), and rather than conferring with Defendants or seeking the court's assistance to ensure AEO information was not disclosed, Attorney D'Ambrose instead chose to file Plaintiffs' motion on the public docket, (R. 97, Pls.' Mot. for Leave to File).

6

Attorney D'Ambrose tries to undermine the validity of the Confidentiality Order by suggesting that the parties drafted the agreed Order with an aim toward settlement, and since the parties are now unlikely to settle, the terms of that Order no longer apply. (R. 110, Pls.' Resp. at 2-3.) The Confidentiality Order acknowledges that as the case progresses, "certain modifications" may be needed "to prevent abuse of the confidential designations and to allow for the fair use of documents and information that relate to and/or rebut the allegations and information already made public." (R. 55, Confidentiality Order ¶ 1.) But the Confidentiality Order provides the processes for either challenging a designation or modifying the Order—and both require judicial intervention. (See id. ¶¶ 9 (stating that a party "may file and serve a motion that identifies the challenged material and sets forth in detail the basis for the challenge," but "[u]ntil the Court rules on the challenge, all parties shall continue to treat the materials as Confidential Information under the terms of this Order"), 15 (stating that the Confidentiality Order may be modified "by the Court on its own initiative or on motion of a party or any other person with standing concerning the subject matter"). Moreover, the June 2024 Order expressly states, "[s]hould the parties require a modification to the present confidentiality order, they may file a motion requesting such relief." (R. 71.)

Attorney D'Ambrose could have petitioned the court to strike or modify the Confidentiality Order, but she did not. She instead opted to ignore the Confidentiality Order, and this is troubling. *See Whitehead v. Gateway Chevrolet*, No. 03 CV 5684, 2004 WL 1459478, at *2 (N.D. Ill. June 29, 2004) (affirming

7

rejection of argument that disclosure of confidential information was permissible because confidentiality order "unreasonably protected non-confidential information" and ruling that party "was required to comply with [] protective order until and unless [the court] modified [it]"). The Confidentiality Order is effective only if enforceable, and Attorney D'Ambrose fails to meaningfully explain her violation. Therefore, given her disregard for court orders crafted in part to protect alleged victims of sexual misconduct, sanctions must be imposed against Attorney D'Ambrose under Rule 37(b)(2)(A) and this court's inherent authority.

Sanctions generally must be measured, have a nexus to the violation, and be "proportionate to the circumstances surrounding the failure to comply with discovery." *Crown Life Ins. Co. v. Craig*, 995 F.2d 1376, 1382 (7th Cir. 1993); *see also Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 740 (7th Cir. 1998) (explaining that sanction "must be one that a reasonable jurist, apprised of all the circumstances, would have chosen as proportionate to the infraction"). Here, Attorney D'Ambrose was warned multiple times throughout these proceedings that the subject information was designated as AEO before she published it, and that compounds her violation. *See Long v. Streep*, 213 F.3d 983, 986 (7th Cir. 2000) (finding circumstances surrounding discovery violation include entire procedural history of case); *see also e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 643 (7th Cir. 2011) ("In other words, we weigh not only the straw that finally broke the camel's back, but all the straws that the recalcitrant party piled on over the course of the lawsuit."). The parties, with the court's assistance, have spent time clarifying

8

confidentiality provisions, only for those efforts to be ignored. Attorney D'Ambrose's misconduct caused delays in these proceedings, increase in fees and costs, and inefficiency within the judicial process. Even more significantly, however, Attorney D'Ambrose's actions have jeopardized the confidential nature of the alleged victims' identities, which this court has sought to protect. (See, e.g., R. 74.)

Rule 37(b)(2)(C) mandates an award of attorney's fees and costs for failure to comply with a court order unless the failure is substantially justified, which is not the case here. Accordingly, the court orders Attorney D'Ambrose to reimburse Defendants' reasonable expenses and fees incurred in connection with the current motion and other related tasks as the court will detail in a separate order. The court also orders Attorney D'Ambrose to compensate the two alleged victims referenced in the SafeSport Complaint, in the amount to be determined later, for disclosing information that could lead Rick, Cheryl, or a member of the public to discern their identities as a result of the improper disclosure of AEO information.

At the same time, the court denies Defendants' remaining requests to sanction Plaintiffs themselves or to impose more serious sanctions like dismissal of the case or holding Plaintiffs and Attorney D'Ambrose in contempt. "The district court should consider less severe sanctions than dismissal for a party's noncompliance with court orders or failure to prosecute his or her claim expeditiously, unless . . . less drastic sanctions have proven ineffective." *Lowe v. East Chi.*, 897 F.2d 272, 274 (7th Cir. 1990). While Attorney D'Ambrose violated court orders, Defendants do not establish that Plaintiffs had the same level of notice

9

as their attorney had. *See id.* ("We are reluctant to affirm a dismissal when there is no sign of either client neglect of court processes or knowledge of the attorney's neglect."). In any event, the more severe sanctions are not proportional to the harm caused to Defendants. *See Newman v. Metro. Pier & Exposition Auth.*, 962 F.2d 589, 591 (7th Cir. 1992) ("If the failure is . . . not a cause of serious inconvenience either to the adverse party or to the judge or to any third parties, dismissal . . . would be an excessively severe sanction."). Having said that, this court will "act with swift decision" if another violation occurs. *Id.*

## Conclusion

For the foregoing reasons, Defendants' motion to seal is granted, and the motion for sanctions against Attorney D'Ambrose is granted but sanctions against Plaintiffs are denied.

       **ENTER:**

       */s/ Young B. Kim*
       **Young B. Kim**
       **United States Magistrate Judge**