IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| RICK BUTLER, an individual, CHERYL BUTLER, an individual, and GLV, INC., an Illinois Corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> NANCY HOGSHEAD-MAKAR, an individual, CHAMPION WOMEN, a Florida Not-For-Profit Corporation, and DEBORAH DIMATTEO, an individual, <br><br> Defendants. | Case No.: 21 cv 6854 <br><br> The Honorable Young B. Kim |

**DEFENDANTS' PETITION FOR REASONABLE ATTORNEY'S FEES AND COSTS AND REQUEST FOR OTHER SANCTIONS PURSUANT TO COURT ORDER (DKT. NOS. 118 & 119)**

NOW COME Defendants, NANCY HOGSHEAD-MAKAR ("Hogshead"), CHAMPION WOMEN, and DEBRA DIMATTEO ("DiMatteo") (collectively, the "Defendants"), and respectfully submit the following Petition for Reasonable Attorney's Fees and Costs and Request for Other Sanctions against the attorney for the Plaintiffs, Danielle D'Ambrose ("Attorney D'Ambrose"), pursuant to this Court's Orders entered on May 14, 2025 (Dkt. Nos. 118 & 119):

**PROCEDURAL POSTURE**

On January 24, 2025, Plaintiffs, RICK BUTLER ("Rick"), CHERYL BUTLER ("Cheryl"), and GLV, INC. (collectively, the "Plaintiffs"), by and through their counsel, Attorney D'Ambrose, filed a Motion for Leave to File a Second Amended Complaint. Dkt. No. 97. Plaintiffs proceeded to file said Motion notwithstanding defense counsel's prior request and warning that one sentence be removed from the brief, as it revealed "Attorney's Eye's Only" ("AEO") information in violation of the Agreed Confidentiality Order and other Court Orders. Dkt. No. 104, p. 4; *see also,* Dkt. No. 118, p. 3. Upon learning that Plaintiffs did not heed Defendants' warning and AEO information was

improperly published in the public record, Defendants filed an Emergency Motion to Seal Docket No. 97 and Motion for Sanctions under FRCP 37(b)(2)(A). Dkt. No. 104. Therein, Defendants requested that sanctions be entered against Attorney D'Ambrose and Plaintiffs pursuant to Rule 37(b)(2)(A) and the Court's inherent authority. *Id.* In total, Defendants prepared and filed six comprehensive briefs (Dkt. Nos. 104, 106, 111, 113, 115 & 116) to address Attorney D'Ambrose's improper disclosure of AEO information in two separate public filings (Dkt. Nos. 97 & 110). Watkins Decl., ¶¶ 13-14 (**Ex. 1**).

On May 14, 2025, this Court granted Defendants' motions to seal, and granted in part and denied in part[1] Defendants' motion for sanctions. Dkt. Nos. 118 & 119. This Court found that Attorney D'Ambrose had violated the Agreed Confidentiality Order (Dkt. No. 55) and Court Orders (Dkt. Nos. 70, 71 & 74) specific to the protections afforded to the victim-reporters and contents of a SafeSport Complaint that Defendants were compelled to produce over objection. Dkt. No. 119, pp. 6-8. Attorney D'Ambrose was held to have disregarded "court orders crafted in part to protect alleged victims of sexual misconduct," "caused delays in these proceedings, increase in fees and costs, and inefficiency within the judicial process," and "jeopardized the confidential nature of the alleged victims' identities, which this court has sought to protect." *Id.* at pp. 8-9. Because this Court found no justification for Attorney D'Ambrose's actions, it ordered her to:

1) Reimburse Defendants' reasonable expenses and fees incurred in connection with Docket Nos. 104, 106, 111, 113-116, and for preparing the instant Petition, *id.* at 9 & Dkt. No. 118; and

2) Compensate the two SafeSport victim-reporters in an amount to be proposed by Defendants and determined by the Court, "for disclosing information that could lead Rick, Cheryl, or a member of the public to discern their identities as a result of the improper disclosure of AEO information," Dkt. No. 119, p. 9; Dkt. No. 118.

---

[1] This Court denied Defendants' request for sanctions against the Plaintiffs, prayer for dismissal of the case, and request for an order of contempt. Dkt. No. 119, p. 9.

The present Petition is filed pursuant to Court Order to aid this Court in its final assessment of sanctions against Attorney D'Ambrose. Dkt. Nos. 118 & 119.

## LEGAL ANALYSIS[2]

### I. Defendants' Should be Awarded the Full Amount of Their Reasonable Attorney's Fees and Costs Expended in Connection with Attorney D'Ambrose's Unjustified Violation of Court Orders and for Preparation of this Petition

The District Court has wide discretion in setting the amount of attorneys' fees recoverable by a party. *Montanez v. Simon*, 755 F.3d 547, 552-53 (7th Cir. 2014) (citing *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011), and confirming fee awards are reviewed under a "highly deferential abuse of discretion standard"). "To determine a reasonable fee, the district court uses the lodestar method, multiplying the 'number of hours reasonably expended on the litigation . . . by a reasonable hourly rate.'" *Pickett*, 664 F.3d at 639 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "The party requesting fees bears the burden of documenting the appropriate hours expended and establishing its entitlement to reasonable hourly rates." *United Central Bank v. Kanan Fashions, Inc.*, No. 10 CV 331, 2012 U.S. Dist. LEXIS 56130, at *7, 2012 WL 1409245 (N.D. Ill. Apr. 23, 2012) (citing *Hensley*, 461 U.S. at 433). "There is a strong presumption that the lodestar calculation yields a reasonable attorneys' fee award." *Id.* (quoting *Pickett*, 664 F.3d at 639).

As argued below and supported by defense attorney's attached Declaration and Exhibits, Attorney D'Ambrose should be ordered to reimburse Defendants in the full amount of **$33,942.50**, which represents the total amount expended in connection with her unjustified violation of Court Orders -- *i.e.*, attorney's fees that Defendants should have never had to assume. Watkins Decl., ¶¶ 19(a)-(c), 22-24 & Exs. A-D (**Ex. 1**).

---

[2] Defendants adopt and incorporate by reference this Court's findings regarding its discretion pursuant to Rule 37(b) and its inherent authority to sanction Attorney D'Ambrose for her violation of Court Orders, including but not limited to the Agreed Confidentiality Order. Dkt. No. 119, 4-5, 7-9; *see also* Dkt. No. 104, 6-7.

### A. **Defense Counsel's Hourly Rate is Reasonable**

For purposes of a fee petition, "[a] reasonable hourly rate is based on the local market rate for the attorney's services." *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014). It is well-established that "[t]he best evidence that a firm is charging a reasonable rate is the client's payment of the bills." *Whitehead v. Gateway Chevrolet*, No. 03 C 5684, 2004 U.S. Dist. LEXIS 11979, at *16 (N.D. Ill. June 28, 2004) (citing *Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.,* 73 F.3d 150, 153 (7th Cir. 1996) ("the best evidence of the market value of legal services is what people pay for it")); *cf.*, *United Central Bank v. Kanan Fashions, Inc.*, No. 10 CV 331, 2012 U.S. Dist. LEXIS 56130, at *8, 2012 WL 1409245 (N.D. Ill. Apr. 23, 2012)). Importantly, "[t]he Seventh Circuit has held, however, that a court should look to 'the next best evidence—the rate charged by lawyers in the community of 'reasonably comparable skill, experience, and reputation' **only** when it is unable to determine the attorney's true billing rate, for example if the attorney 'maintains a contingent fee or public interest practice.'" *Worldpay US, Inc. v. Haydon*, No. 17 C 4179, 2020 U.S. Dist. LEXIS 99792, at *58-59, 2020 WL 3050344 (N.D. Ill. June 8, 2020) (quoting *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996)) (emphasis added).[3] "Once an attorney 'provides evidence establishing his market rate, the opposing party has the burden of demonstrating why a lower rate should be awarded.'" *Blaga v. Old Dominion Freight Line, Inc.*, No. 12 C 8049, 2015 U.S. Dist. LEXIS 83796, at *8, 2015 WL 3957737 (N.D. Ill. June 29, 2015) (quoting *Gautreaux v. Chi. Housing Auth.*, 491 F.3d 649, 659-60 (7th Cir. 2007)).

---

[3] Even if this Court were to engage in a "next best evidence" analysis (which is *not* necessary here), it would find that defense counsel's rates are in line with rates deemed reasonable in similar cases. *See, e.g., Ewing v. 1645 West Farragut, LLC*, No. 16-cv-9930, 2022 U.S. Dist. LEXIS 120672, at *5-7, 2020 WL 2657222 (N.D. Ill. July 8, 2022) (in a case involving the Illinois Consumer Fraud Act, this Court found that the plaintiffs' lawyers' rates ranging from $325 to $400 per hour were reasonable); *Smith v. Nexus RVSA, LLC*, 572 F. Supp. 3d 550, 558-59 (N.D. Ind. 2021) (finding an hourly rate of $450 was reasonable in a case brought under the Indiana Deceptive Consumer Sales Act); *Baier v. Rohr-Mont Motors, Inc.*, 175 F. Supp. 3d 1000, 1020 (N.D. Ill. 2016) (approving as reasonable a partner rate between $350-$375 per hour, and an associate rate between $200-$275 per hour, in an employment dispute involving a defamation claim); *Echo, Inc. v. Timberland Machines & Irrigation, Inc.*, No. 08 C 7123, 2009 U.S. Dist. LEXIS 75889, at *15, 2009 WL 2746725 (N.D. Ill. Aug. 26, 2009) (determining a partner rate of $400 was reasonable in a case involving tortious interference with contract).

Attached as **Exhibit 1** is a Declaration by defense attorney Watkins detailing: (i) the levels of experience of the attorneys representing the Defendants; (ii) the rates negotiated at the inception of Defendants' engagement of Amundsen Davis, LLC in 2022, which vary commiserate with the level of attorney experience; (iii) that the agreed-upon rates represent a *reduction* from the typical hourly rates charged by defense counsel for lawsuits of this complexity; (iv) that these rates have remained consistent throughout the case; and (v) that every invoice issued to Defendants in this case has been paid in full. Watkins Decl., ¶¶ 1-12, 18 & 19(a)-(c) (**Ex. 1**). This evidence is sufficient for a finding that defense counsel's rates are reasonable. *Balcor Real Estate Holdings, Inc.,* 73 F.3d at 153; *see, e.g., Muzikowski v. Paramount Pictures Corp.*, No. 01 C 6721, 2005 U.S. Dist. LEXIS 13127, at *11-13 (N.D. Ill. June 10, 2005) (rejecting the defendant's argument that plaintiff's counsel's declaration was self-serving, and finding the affirmation as to the amount billed and paid by the client was sufficient to establish a reasonable rate).

### B. Defense Counsel's Detailed Billing Entries Substantiate that their Time Spent was Reasonable and Necessary

Next, the Court must determine the reasonableness of the time spent bringing the discovery motion and attending petition for fees. *United Central Bank*, 2012 U.S. Dist. LEXIS 56130, at *9. "An hour reasonably expended is an hour that is not excessive, redundant or otherwise unnecessary." *Id.* (quoting *Williams v. Z. D. Masonry, Corp.,* No. 07 C 6207, 2009 U.S. Dist. LEXIS 11554, 2009 WL 383614, at *1 (N.D. Ill. Feb. 17, 2009)). Courts are cautioned, however, that:

> Lawyers do not come from cookie cutters. Some are fast studies and others require extra preparation. Some are more nimble on their feet and apt to achieve better results at trial. Some have deeper insight and in a few hours may find ways to prevail (or to curtail costly discovery) that will elude their colleagues.

*Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993); *see also, Smart Oil, LLC v. DW Mazel, LLC*, No. 15 C 8146, 2019 U.S. Dist. LEXIS 114282, at *17, 2019 WL 3003095 (N.D. Ill. July 10, 2019).

"In determining the reasonableness of the time an attorney spent in bringing a discovery motion, courts often consider 'the length of the motion or memorandum, the complexity of the case, and the amount of authority the document refers to.'" *Blaga v. Old Dominion Freight Line, Inc.*, No. 12 C 8049, 2015 U.S. Dist. LEXIS 83796, at *8, 2015 WL 3957737 (N.D. Ill. June 29, 2015) (quoting *Gray v. U.S. Steel Corp.*, 284 F.R.D. 393, 397 (N.D. Ind. 2012)). "Courts also frequently take into account 'the ferocity' of an opposing attorney's 'handling of the case.'" *Id.* (quoting *Krumwiede v. Brighton Associates*, No. 05 C 3003, 2006 U.S. Dist. LEXIS 60654, at *3, 2006 WL 2349985, at *1-2 (N.D. Ill. Aug. 9, 2006)).

Ultimately, the Court is "not obligated to conduct a line-by-line review of the bills to assess the charges for reasonableness." *Rexam Beverage Can Co. v. Bolger*, 620 F.3d 718, 736 (7th Cir. 2010). The Supreme Court has also "repeated[ly] admoni[shed] that fee petitions should not evolve into satellite litigation." *Hangzhou Aoshuang E-Commerce Co. v. 008fashion*, 336 F.R.D. 154, 160 (N.D. Ill. 2020) (citing *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1988 (2016); *City of Burlington v. Dague*, 505 U.S. 557, 566 (1992); *Hensley*, 461 U.S. at 437).[4] Thus, "[w]here a [party] has obtained excellent results, his attorney should recover a fully compensatory fee. . . . In these circumstances the fee award should not be reduced simply because the [party] failed to prevail on every contention raised[.]" *Hensley*, 461 U.S. at 435.

This Court has ordered Attorney D'Ambrose to reimburse Defendants' reasonable expenses and fees incurred in connection with their motion for sanctions and related filings, as well as preparation of the present petition for fees. Dkt. No. 118 (citing Dkt. Nos. 104, 106, 11, and 113-16; Dkt. No. 119, p. 9. In connection with the adjudication of their Motions to Seal and for

---

[4] *See also, Annie Oakley Enterprises v. Amazon,* No. 21-2262, 2021 U.S. App. LEXIS 38892, at *1, 2021 WL 6331485 (7th Cir. Sep. 16, 2021) (citing *Cunningham v. Hamilton County,* 527 U.S. 198 (1999); *Cleveland Hair Clinics, Inc. v. Puig,* 104 F.3d 123, 126 (7th Cir. 1997)) (in an appeal of a decision awarding attorneys' fees for a Rule 37 discovery violation, the court found, "[l]ike an attorney fee award, a party (or attorney) must wait to appeal a sanctions order until the district court has entered a final judgment on the merits of the underlying case").

Sanctions, Defendants request an award of **$22,602.50**, representing **64.4 hours** of professional time expended by defense counsel. Watkins Decl., ¶¶ 19(a)-(c), 22 & Exs. A-D (**Ex. 1**); *see infra* at § I(B)(1). For preparation of the present Petition, Defendants request an award of **$11,340.00**, representing **32.4 hours** of reasonable attorney time. Watkins Decl., ¶ 22 & Ex. D (**Ex. 1**); *see infra* at § I(B)(2).

As is their custom and practice, defense counsel recorded and billed their time through detailed time entries so their clients knew precisely the nature of legal work being performed. *Id.* at ¶¶ 19(a)-(c), 22 & Exs. A-D. Defendants are also current on all invoices in this matter, which serves as strong evidence that the time expended was reasonable. *Id.* at ¶¶ 18 & 19(a)-(c). The reasonableness of Defendants' request for reimbursement of a total of **$33,942.50** is further supported by the comprehensive nature of the briefs at-issue and the details provided below regarding the sensitivity and complexity of addressing the appropriateness of sanctions in this case.

> 1. **Attorney D'Ambrose's Improper Conduct Could Not Go Unanswered, and Responding to Her Violations of Court Orders Required Both Expediency and Precision, Given the Sensitivity of the Issues Involved**

To properly respond to the specific nature of Attorney D'Ambrose's violations of Court Orders, defense counsel had to act both swiftly and with considerable caution. On two occasions, Defendants were compelled to bring emergency motions to seal to pursue expedient removal of the AEO information that Attorney D'Ambrose published in the public record. *See* Dkt. No. 104 (requesting the Court place Dkt. No. 97 under seal); Dkt. No. 111 (requesting seal of Dkt. Nos. 110 and 110-4); Watkins Decl., ¶ 15 (**Ex. 1**). In making their arguments to seal and for sanctions, however, Defendants had to take great care to avoid revealing the true identities of the SafeSport victim-reporters. To wit, Attorney D'Ambrose did not identify victims *by name* in her now-sealed filings. *See* Dkt. Nos. 97, 110 & 110-4. Still, she provided sufficient information to allow Rick,

Cheryl, and the public at large to determine exactly who she was referring to in her briefs and assume that those individuals were in fact the victim-reporters. *Id.*; *see also*, Dkt. No. 104, pp. 6, 8-9.

In Defendants' Motion for Sanctions, which was filed on an emergency basis (*see* Dkt. No. 104), Defendants could not repeat Attorney D'Ambrose's statements or explain the significance of her chosen words without similarly violating Court Orders granting anonymity to the victim-reporters. *See* Dkt. No. 111, pp. 2-3.[5] Accordingly, Defendants necessarily sought leave to file their reply brief under seal so they could establish for the Court, through argument and exhibits, specifically why the information Attorney D'Ambrose disclosed was sufficient to discern who she was outing as the SafeSport victim-reporters. *Id.*

To that end, Defendants' reply brief was indispensable to their Motion for Sanctions. Defense counsel recognized that the Court may not be familiar with the decades of discussions at a local and national level regarding the claims of sexual abuse against Rick. Moreover, "[i]t is not the role of the Court to conduct research and construct legal arguments for the parties." *Kleronomos v. Aim Transfer & Storage Inc.*, No. 19 C 01844, 2020 U.S. Dist. LEXIS 163067, at *6 n.3, 2020 WL 5365976 (N.D. Ill. Sep. 8, 2020) (citing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (stating, Judges are not "like pigs, hunting for truffles buried in briefs")). Defendants determined it was crucial to provide a comprehensive sampling of the sources that establish how easily a member of the public, with *zero* knowledge of the situation, could quickly discover the identities of the individuals D'Ambrose had referenced. Accordingly, Defendants' argument on reply was more extensive than what may be considered a more traditional reply brief. Defendants' filing consisted of

---

[5] For a prime example of the fine line Defendants had to navigate in their briefs, *see* Docket No. 115 at page 6: **Importantly, Defendants are in no way confirming the identities of the SafeSport victim-reporters.** To do so would be a violation of Court Order. Rather, Defendants argue that a reasonable reader would identify the individuals being referred to in Plaintiffs' statements below and conclude, given Attorney D'Ambrose's access to the SafeSport Complaint, that these individuals were in fact the victim-reporters.

Page 8 of 14

a 14-page brief, a 4-page declaration, and 224 pages of exhibits, which took considerable time to research, designate, evaluate and present in a clear and compelling manner. *See* Dkt. No. 115—115-8.

The hours of attorney time expended in expeditiously and effectively addressing Attorney D'Ambrose's repeated violations were reasonable. Although this Court declined to enter sanctions against the Plaintiffs or approve the more extreme punishments within its discretion, including dismissing the case and holding the parties in contempt, Defendants' motion practice achieved their primary goals: (1) the AEO information was expeditiously removed from the public record; (2) Defendants promptly notified the Court of Attorney D'Ambrose's violations; and (3) Defendants' achieved a ruling that will hopefully prevent and deter future violations of Court Orders by Attorney D'Ambrose and her clients. Watkins Decl., ¶ 15(a)-(c) (**Ex. 1**); *see Hensley*, 461 U.S. at 435 (confirming excellent results should result in a full fee award, even if the party does not prevail on every contention raised).

Additionally, Defense counsel took care in reducing billed entries to request reimbursement only for the time spent on the sanctions issue and related briefings. *See, e.g.,* Watkins Decl. at Ex. A (reducing a 1.00 entry to a request for 0.3, and a 1.7 to a 0.3), Ex. B (reducing a 0.7 to a 0.1) & Ex. D (reducing a 0.5 to 0.4) (**Ex. 1**). The undersigned also did not bill for all of her time spent communicating with the victim-reporters about this egregious intrusion on their seclusion. *Id.* at ¶ 28. So, the hours recorded are not reflective of the *total* amount of damage control defense counsel engaged in as a result of Attorney D'Ambrose's intentional and wrongful conduct.

Finally, the professional time spent was necessary given the significant privacy interests involved, and the Defendants' interests in ensuring Court Orders are upheld and alleged sexual assault victims are protected. *Id.* at ¶ 15(a)-(c); *see also, id.* at ¶ 29 (noting the victim-reporters' concerns that other AEO materials have been improperly shared or will be in the future). Defendants have consistently argued that this lawsuit represents an improper attempt by Plaintiffs to

suppress free speech. *See, e.g.,* Dkt. Nos. 20-21 (arguing, in part, for dismissal under the applicable "anti-SLAPP" statutes). Defendants could not stand idly by while Attorney D'Ambrose engaged in actions that threatened to silence future reporting to the U.S. Center for SafeSport necessary to the protection of athletes from sexual misconduct.

## 2. **Preparation of this Petition Required Significant Time, Given the Unique Issues Involved in the Sanctions Briefings, as well as Thoughtful Consideration of How to Right this Wrong**

As attested to, Amundsen Davis, LLC has not yet prepared a final invoice for May, 2025, as the month is still open as of the date of this filing. Watkins Decl., ¶ 21 (**Ex. 1**). Instead, the undersigned submitted all time entered into her firm's iTimekeep system, which is used to generate final invoices in the regular course of firm business. *Id.* at ¶¶ 21-22. The amount reflected in Exhibit D to Attorney Watkins' Declaration (referred to as the "May 2025 Invoice") is an accurate representation of what will be billed to Defendants in connection with the evaluation of the Court's ruling (Dkt. Nos. 118 & 119) and preparation of this Petition, including the request for sanctions owed to the SafeSport victim-reporters, as addressed *infra. Id.* at ¶¶ 21-22 & Ex. D.

For all the reasons enumerated above and in the relevant briefs and ultimate ruling, the nature of Attorney D'Ambrose's violations of Court Orders presented unique circumstances that required the protection of and advocacy on behalf of third-parties/alleged sexual assault victims. *See, e.g.,* Dkt. No. 119, pp. 6, 8-9. This was a not a simple, mistaken disclosure of intellectual property in violation of a confidentiality order. This was the knowing, unjustified outing of identities this Court deemed worthy of the utmost protection. *Id.* Preparation of this comprehensive Petition and attending Declaration, which justify the attorney time spent addressing this critical issue, was reasonable and necessary to compensate Defendants for fees they should have never had to expend.

This Court also acknowledged the third-parties most harmed by Attorney D'Ambrose's conduct through requesting Defendant recommend an amount of compensation for each victim-

reporter. Dkt. No. 118. As detailed in the next section and reflected in the submitted invoices, undersigned counsel for Defendants is the only attorney who has had contact with the victim-reporters. Watkins Decl., ¶ 25 (**Ex. 1**). Given the unique opportunity for restitution for violations of these third-parties' privacy interests, Attorney Watkins necessarily discussed the ruling with the victim-reporters and requested their input on how to conceivably right this wrong. *Id.* at ¶¶ 26-28, 30. The attorney time spent preparing this Petition is reasonable, and Attorney D'Ambrose should be ordered to reimburse Defendants for such fees.

II. **Recommendation for Sanctions to Compensate the SafeSport Victim-Reporters for Attorney D'Ambrose's Violation of their Privacy and Anonymity, Threat to their Safety, and Amplification of their Emotional Distress**

"Rule 37 gives the district court significant discretion to enter 'just orders' in molding the appropriate sanction to address the particular circumstances of the relevant discovery abuse." *Zollicoffer v. Gold Standard Baking, Inc.*, No. 13 CV 1524, 2018 U.S. Dist. LEXIS 250990, at *5, 2018 WL 11630893 (N.D. Ill. Sep. 6, 2018) (citing Fed. R. Civ. P. 37(b)(2)(A); Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, 8B *Federal Practice & Procedure* § 2289 (3d ed. 2010)). Here, the Court has exercised that discretion by granting Defendants' request that monetary sanctions be paid to the SafeSport victim-reporters, specifically ordering Defendants to submit a suggested amount payable by Attorney D'Ambrose. Dkt. No. 118.

In their Motion for Sanctions, Defendants suggested that Attorney D'Ambrose and the three Plaintiffs should each be required to pay *no less than* $5,000 to each victim-reporter. Dkt. No. 104, p. 11. This recommendation was made based on the singular sentence included in Plaintiffs' Motion for Leave (Dkt. No. 97) that violated the Court's Orders. Watkins Decl., ¶ 32 (**Ex. 1**). Thereafter, however, Attorney D'Ambrose doubled-down on her contumacious conduct and responded in opposition to Defendants' Motion for Sanctions by including multiple statements revealing AEO information. *Id.*; *see* Dkt. No. 115, pp. 6-7 (quoting Dkt. Nos. 110 & 110-4).

Consequently, Defendants' original suggestion of a monetary sanction is no longer appropriate, as it is not a "carefully measured response to the sanctioned conduct." *Kapco Mfg. Co., Inc. v. C & O Enters., Inc.*, 886 F.2d 1485, 1496 (7th Cir. 1989); Watkins Decl., ¶ 32 (**Ex. 1**).

The impact of Attorney D'Ambrose's intentional and unjustified actions against the SafeSport victim-reporters is not the type of harm that can easily be reduced to (or adequately resolved by) a monetary sanction.[6] Attorney D'Ambrose received a copy of the victim-reporters' sealed response to this Court's ruling granting Plaintiffs' Motion to Compel the SafeSport Complaint. Watkins Decl., ¶ 29 (**Ex. 1**); *see also,* Sealed Resp. (Dkt. No. 73). Presumably, she read the alleged victims' explanations as to *why* they chose to file their SafeSport Complaint against Rick anonymously. Attorney D'Ambrose ignored the victim-reporters' expressions of fear for their safety, job security and the well-being and safety of their families, just as easily as she ignored the Court's Orders protecting these victims' identities. *See* Dkt. No. 119, pp. 6, 8-9. Such egregious conduct must have a reasonably comparable consequence, particularly where Attorney D'Ambrose *and Plaintiffs* continue to be in possession of materials subject to "confidential" designations, including AEO information. *See* Watkins Decl., ¶ 29 (**Ex. 1**). Indeed, "Rule 37 sanctions must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.'" *Williams v. Chicago Board of Education*, 176 F.R.D. 547, 549-50 (N.D. Ill. 1997) (quoting, *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764-65 (1980)).

As detailed in the attached Declaration, defense counsel consulted with the victim-reporters on how to place a value on the considerable harm, fear, and emotional distress caused by Attorney D'Ambrose. Watkins Decl., ¶¶ 25-30 (**Ex. 1**). The alleged victims were largely unable to specify a

---

[6] *See, generally, United States v. Whitley*, 354 F. Supp. 3d 930, 935 (N.D. Ill. 2019) (although this case dealt specifically with the Victims of Trafficking and Violence Protection Act and the Mandatory Victims Restitution Act, the decision provides a comprehensive explanation of the lifetime of recovery and healing present in cases of child sexual abuse and the difficulty in calculating a figure of restitution).

figure that aptly addressed the impact of this completely avoidable circumstance. *Id.* at ¶ 30. However, they did suggest that the Court consider the value of this case to Rick and Cheryl as an anchor point because, upon reasonable belief, Attorney D'Ambrose made a calculated decision to advance her clients' position through outing and silencing Rick's alleged victims notwithstanding the known possibility that she could be sanctioned. *Id.*

With this thoughtful guidance, coupled with an understanding of the severe consequences of Attorney D'Ambrose's choices and the possibility of further damage if she (or her clients) continue to violate the procedural rules and Orders of this Court, Defendants conservatively suggest the following:

(1) Attorney D'Ambrose should be ordered to pay **0.01% of the Plaintiffs' $250 million prayer for relief**, or **$250,000.00 total**, to be split evenly between the two individuals whose identities she knowingly and wrongfully revealed to her clients and the public; and

(2) Pursuant to the victim-reporters' requests, this Court should report Attorney D'Ambrose to the Attorney Registration & Disciplinary Committee of the Supreme Court of Illinois (the "ARDC") for her unjustified violation of Court Orders.

*Id.* at ¶¶ 31 & 33.

--

WHEREFORE, for the reasons set forth above and in the attached Declaration and Exhibits, and pursuant to this Court's May 14, 2025 Orders (Dkt. Nos. 118 & 119), Defendants respectfully request the following relief of Court:

(a) Entry of an Order requiring Attorney Danielle D'Ambrose to compensate Defendants in a total amount of **$33,942.50**, representing Defendants' reasonable attorney's fees and costs expended in tasks performed in connection with Docket Nos. 104, 106, 111, and 113-116;

(b) Entry of an Order requiring Attorney Danielle D'Ambrose to compensate the alleged victims referenced in the SafeSport Complaint a total of **$250,000.00**, to be split evenly among them;

(c) The submission of a formal complaint to the Attorney Registration & Disciplinary Committee ("ARDC") regarding Attorney Danielle D'Ambrose's conduct that resulted in the present award of sanctions; and

(d) Entry of any additional relief that this Court deems just and warranted under the present circumstances and pursuant to its discretion under Federal Rule of Civil Procedure 37(b) and its inherent authority.

Respectfully submitted,

**DATED: May 28, 2025**

_____

**Danessa P. Watkins** (IL ARDC # 6314234)
*One of the Attorneys for the Defendants*

Ryan B. Jacobson, Esq.
Danessa P. Watkins, Esq. (6314234)
AMUNDSEN DAVIS, LLC
150 North Michigan Avenue
Suite 3300 Chicago, Illinois 60601
(312) 894-3200
rjacobson@amundsendavislaw.com
dwatkins@amundsendavislaw.com